IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | |
| vs. ) | NO. 2:19-cr-43 |
| ) | 2:22-cv-95 |
| ) | |
| MONTRELL MILLER, ) | |
| ) | |
| Defendant/Petitioner. ) | |

## OPINION AND ORDER

Montrell Miller pleaded guilty to being a felon in possession of a firearm. In this petition filed under section 2255, Miller challenges his sentence. In particular, Miller contends his counsel was constitutionally ineffective for failing to argue that a four-point sentencing enhancement was inapplicable and failed to object to a miscalculation of his criminal history. [DE 82 at 4-5.] Miller's claims fail because his counsel *did* object to the four-point sentencing enhancement. And while counsel made a cogent argument on Miller's behalf, I ultimately overruled the objection. As for the calculation of his criminal history, Miller was properly placed in criminal history category VI under the Sentencing Guidelines. Miller's petition will therefore be denied.

### Background

In March 2019, Miller was in the passenger seat of a vehicle that was stopped by the Gary Police. [Plea Agreement, DE 34 at 5; Sent Tr., DE 88 at 15.] Several things

immediately aroused the officers' suspicion. First, an officer detected a very strong odor of marijuana emanating from the car. [DE 34 at 5.] Second, in response to questions, Miller repeatedly gave incorrect birth dates and names to the officers. *Id.* Additionally, the first officer that went up to the vehicle noticed that Miller was nervous and began to move around as if he was trying to conceal something. [DE 88 at 15.] So the police asked the occupants to exit the vehicle. [DE 34 at 5.]

A subsequent search revealed that Miller was sitting with an American Tact AR 15 rifle between his legs in the front seat of the car. *Id.* The AR 15 rifle was fully loaded with 25 rounds, including one in the chamber. [PSR, DE 67, at ¶¶ 10-11.] Near Miller's rifle was a pill bottle holding nine small plastic bags containing cocaine and cocaine base; the drugs were packaged, according to the government, for distribution. [*Id.* ¶¶ 11, 13; DE 88 at 15-16.] In Miller's pockets were 87 pills, 5.2 grams of marijuana, and $1,776 in cash. *Id.* Miller told the officers the pills were Ecstacy, although the testing results from the DEA lab were inconclusive for the pills. [PSR ¶ 11; DE 88 at 11.]

Miller was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). [DE 1.] Miller pleaded guilty by way of plea agreement. [DE 34.] The PSR calculated Miller's base offense level as 22 under U.S.S.G. ¶ 2K2.1(a)(3) because his firearm was capable of accepting a large-capacity magazine and he had a prior felony battery with a deadly weapon conviction that was a "crime of violence." PSR ¶¶ 15, 20, 37. The PSR further recommended a three-point reduction for acceptance of responsibility (PSR ¶¶ 27-28), and a four-point enhancement for using or possessing a

firearm in connection with another felony offense. [PSR ¶ 21 (citing U.S.S.G. § 2K2.1(b)(6)).] In this case, Miller received the four-point enhancement for the firearm being possessed in connection with another felony offense (drug trafficking).

Miller's counsel filed an objection to the four-point enhancement [DE 46, 68] and argued in her sentencing memorandum that it wasn't applicable, claiming because the cocaine was found under the seat and there were three other individuals in the car at the time of Miller's arrest, there was no ownership and no evidence that the mere presence of cocaine and a weapon in the same car were related. [DE 70 at 2.] Counsel also cross-examined ATF Agent Cannon at the sentencing hearing, as well as argued at the hearing that the enhancement was not applicable. [DE 88 at 20-23, 27.] Ultimately, I determined that the enhancement was applicable. Here is what I said:

> I'm going to overrule the objection. I think on balance under a preponderance standard, which is what I'm operating under, the government has met its burden that the defendant possessed this firearm, quote, "in connection with another felony offense." That's under 2K2.1(b)(6)(B). So the question becomes, what does it mean to possess a firearm in connection with another felony offense? The starting point is always the application notes. Application Note 14 is the pivotal application note here. What it states is that "Subsection (b)(6)(B)" – the one that's applicable here – "applies if the firearm facilitated or had the potential of facilitating another felony offense." And then in Application Note B, it gives some examples: "In the case of a drug trafficking offense in which a firearm is found in close proximity" – that would be an example where the firearm is facilitating a drug trafficking crime. At the outset, I don't accept the government's argument that if this was simply possession and user quantity of narcotics that that would justify this enhancement. I read the *Briggs* case that Ms. Severtson pointed out that draws a distinction between drug trafficking versus felony drug possession, so I'm specifically not ruling on that basis. But on the preponderance of the evidence, I do think that

> this defendant was possessing the firearm in furtherance of a drug trafficking felony for a number of reasons. First, he's in possession of 87 pills. Now, there is some question whether that is, in fact, Ecstasy; but this is an admission against interest when somebody admits to a police officer that these are Ecstasy, a controlled substance, so put some weight to that. According to what the officer testified to, Officer Cannon, 87 pills is a large quantity. It's not what you would expect a user to be possessing for their own consumption. It's more akin to distribution quantity. Plus, there is a field test that reflects at least some of the pills came back, as, in fact MDMA or Ecstasy. In addition, the cocaine – or the crack cocaine is found, according to the report, "nearby the gun." What exactly that means, I don't know, but I don't think I have to define it precisely. There is some furtive movements that's being made in the car as the police officer approaches the car, and the cocaine is packaged for distribution, plainly, in either dime – or dime bag quantity, so that's also indicia of drug distribution, not just possession. And, most importantly, the defendant is in possession of $1776 is cash, which is a fairly large sum of money that it's unlikely he would have if it was simply possession of the drugs. That's indicative of some drug distribution. So the question then becomes, was the firearm that was found between his legs facilitating that offense? And on the preponderance of the evidence, I think the answer is yes, so I'm going to overrule the objection on that basis.

DE 88 at 28-30.]

In turning to the criminal history calculation, Miller had numerous prior Indiana state court felony convictions including intimidation, cocaine possession, and battery with a deadly weapon. [PSR §§ 14, 32-39.] The PSR found Miller had 13 criminal history points: 1 for a 2010 suspended sentence for cocaine possession; 2 for a 2009 one-year sentence for carrying a handgun without a license; 3 for a 2011 four-year sentence for intimidation; 3 for a 2011 four-year sentence for battery with a deadly weapon (imposed consecutive to the intimidation sentence); 2 for a 2016 six-month sentence for cocaine

4

possession; and 2 for a 2019 sixty-one day time-served sentence for battery resulting in moderate bodily injury. [PSR ¶¶ 32-39.] This placed him in Criminal History Category VI, with an advisory guideline range of 92-115 months imprisonment. [PSR ¶ 78.] Miller did not object to the criminal history calculation at the hearing or in his sentencing memorandum. [DE 70; DE 88.]

On May 13, 2021, I sentenced Miller to 92 months incarceration, which was the very bottom of the guideline range. [DE 75.] Miller did not appeal.

The instant 2255 petition contains two claims. Miller argues his counsel was ineffective for failing to object to: (1) the four-point enhancement for using or possessing a firearm in connection with another felony offense; and (2) the criminal history calculation. [DE 82, 84.]

**Discussion**

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus petition pursuant to section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

In assessing Miller's motion, I am mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook Cnty.*

5

*Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Riley v. United States*, No. 2:05-cv-380, 2006 WL 2849721, at *2 (N.D. Ind. Sept. 28, 2006) (quoting *Barnett v. Hargett*, 174 F.3d 1128, 133 (10th Cir. 1999)).

Miller claims that his trial counsel provided ineffective assistance of counsel. Any ineffective assistance of counsel claim is governed by the 2-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, Miller must first show the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance" and second, he must show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 690, 694; *see also Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993). There is a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *see also Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (an attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate.").

I.      Issue One: Four-Level Enhancement

Miller claims his counsel was ineffective for failing to properly object to the four-point enhancement under U.S.S.G. § 2K2.1(b)(6) for possessing his firearm in connection

6

with another felony offense. [DE 82 at 4.] Specifically, he claims counsel objected to the enhancement on paper, "but at sentencing, she didn't verbally object to the enhancement, nor did she even bring it up." [DE 82 at 4, *see also* DE 93 at 1.] This claim is simply not supported by the record.

Trial counsel filed an objection to the PSR [DE 46, 68] and addressed this issue in her sentencing memorandum. [DE 70.] Additionally, contrary to Miller's assertion, his attorney absolutely did raise this issue during the sentencing hearing. She cross-examined the government witness about the other people in the car, where the weapon was found, the report on the alleged Ecstasy pills being inconclusive, and whether the officer knew that Miler was a longtime Ecstasy user. [DE 88 at 20-23.] In addition, counsel pointed my attention to the case of *United States v. Briggs*, 919 F.3d 1030, 1033 (7th Cir. 2019), stating "the mere fact that guns and drugs are found near each other doesn't establish a nexus between them. A court must say more to connect the two." And she argued against the enhancement at the hearing. [DE 88 at 27.]

At the sentencing hearing, I recognized "the critical issue here of the four-level enhancement." [DE 88 at 13.] In my opinion, there was nothing more Miller's counsel could have done to make this objection or to further argue it. She did a commendable job of bringing it to the court's attention and making a cogent argument, supported by case law, both in writing and orally at the sentencing hearing. Just because counsel loses on a point doesn't make her performance ineffective.

Aside from not pointing to deficient performance, Miller also cannot show prejudice. I stand by my extensive reasoning that I recapped earlier in this opinion, finding the enhancement applied. My conclusion is supported by clear case law. "[W]hen the guns are possessed along with the materials of a drug trafficker, it is a reasonable inference that the guns protect or embolden the criminal enterprise." *United States v. LePage*, 477 F.3d 485, 489 (7th Cir 2007); *see also* U.S.S.G. § 2K2.1 cmt. N.14(B). And I correctly applied *Briggs*, recognizing that the enhancement would not apply "if this was simply possession and user quantity of narcotics." [DE 88 at 29.] I found in this case that the possession of a distribution quantity of pills that might be Ecstasy, plus cocaine bagged for distribution, and a relatively large amount of cash led to the reasonable inference that Miller was engaged in drug trafficking, and that his gun facilitated that trafficking. [DE 88 at 28-30.] As such, even if counsel's performance had been deficient in some manner (which it was not), I still would have come down the same way on the four-level enhancement. In sum, there is no prejudice.

Finally, Miller mentions in his section 2255 petition that he did not actually possess the cocaine because it "was not on [his] person/possession, but was on the floor of the vehicle next to the firearm." [DE 84 at 1.] His attorney raised this point at the sentencing hearing [DE 88 at 27], but I simply disagreed with this argument. [DE 88 at 29-30.]

8

**II.     Issue II: Criminal History**

Miller also claims that his counsel was ineffective for not objecting to the criminal history calculation. [DE 82 at 5.]  Specifically, he contends his past state convictions for possessing cocaine should not have counted towards his criminal history because Indiana law defines cocaine more broadly than federal law. [DE 84 at 2.]  His argument is misguided.

The one case Miller cites in support of his proposition is *Lomax v. United States*, No. 1:19-CV-03843-SEB-MPB,  2021 WL 490271 (S.D. Ind. Feb. 9, 2021).  But that case stands for the proposition that some Indiana drug offenses may no longer qualify as a "felony drug offense" to support a *sentence enhancement* under §§ 841(b)(1)(A) and 851.  In *Lomax*, the defendant was subject to an enhanced sentence under 21 U.S.C. § 851 due to a prior conviction for possession of cocaine in violation of Indiana Code § 35-48-4-6. *Id.* at *1.  Because the district court found that Indiana's definition of "cocaine" was broader than the federal definition, defendant's prior conviction did not qualify as a "felony drug offense" for an enhanced sentence under section 851.  *Id.* at *3.  The district court reached this decision by relying on *United States v. De La Torre*, 940 F.3d 938, 951-52 (7th Cir. 2019), which held that Indiana's definition of methamphetamine was overbroad, and thus a defendant's Indiana conviction of dealing in a controlled substance could not serve as a predicate felony drug offense to subject him to a section 851 enhancement.  But there is no support for the argument that  *De La Torre* and *Lomax* also apply to calculating criminal history points.

9

Rather, the Sentencing Guidelines are still intact and direct the Court to count criminal history points "for all felony offenses." U.S.S.G. § 4A1.2(c). Here, both cocaine offenses that Miller mentions in his motion are felonies. [PSR ¶¶ 33, 38.] They both warrant criminal-history points, regardless of whether they would count as "felony drug offenses" or "controlled substance offenses" for the purpose of sentencing enhancements.

Because this theory lacks merit, Miller's counsel could not have been ineffective for failing to raise it, and Miller has suffered no prejudice. *See United States v. Madewell*, 917 F.2d 301, 304 (7th Cir. 1990); *Adkins v. United States*, No. 2:09 CR 32-PPS, 2016 WL 2625362, at *1 (N.D. Ind. May 9, 2016) ("[L]awyers do not have a duty to raise every argument or frivolous defense.").

For the reasons articulated above, I can't say that trial counsel's actions fell below an objective standard of reasonableness, and that but for counsel's errors, the result of the proceeding would have been different.

## Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the motion should have been

10

resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (U.S. 2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Miller has not stated any grounds for relief under section 2255. The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued.

## Conclusion

For the foregoing reasons, Miller's § 2255 [DE 82] is **DENIED and DISMISSED** with prejudice. The Clerk shall enter final judgment accordingly.

SO ORDERED.

ENTERED: October 7, 2022.

                                          s/ Philip P. Simon
                                          PHILIP P. SIMON, JUDGE
                                          UNITED STATES DISTRICT COURT